**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

| | |
|---|---|
| **DON AND PATRICIA SETTLE** ) | |
| as next friends of E.S., a minor, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| **STAPLES, INC. (Defendant 1);** ) | |
| **and STAPLES THE OFFICE** ) | |
| **SUPERSTORE, L.L.C. (Defendant 2),** ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiffs, Don and Patricia Settle, as next friends of E.S., a minor, ("Plaintiffs or Settle") file their Original Complaint against Defendants, Staples, Inc. and Staples the Office Superstore, L.L.C. ("Staples") and for their cause-of-action respectfully show this Court as follows:

**PARTIES AND JURISDICTION**

1. The amount involved in this action is in excess of $75,000.00, exclusive of interest and costs. This Court has jurisdiction of this case by the reason of the amount-in-controversy and by reason of diversity-of-citizenship.

2. Don and Patricia Settle are the natural parents of E.S., and are individuals residing in Lubbock, Texas.

3. At all times material hereto, Defendants, Staples, Inc. and Staples the Office Superstore, L.L.C. were Delaware corporations doing business in the State of Texas; and further that said Defendants held themselves out as a company experienced and capable in the design, manufacture, fabrication, and assembly of electric paper shredders for use in the home by

PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

consumers in Texas and throughout the world. Staples, Inc. and Staples the Office Superstore, L.L.C., may be served with process by serving CT Corporation Company, 350 N. St. Paul St., Dallas, TX 7520l.

4.    At all times relevant to the causes of action asserted herein, the non-resident Defendants have had continuing and systematic contact with the State of Texas by delivering their products into the stream of commerce with the expectation that the products would reach consumers within the State of Texas. Further, Defendants have had minimum contacts with Texas and are doing business in Texas, by, among other things: entering into contracts, by mail or otherwise, with residents of the State of Texas and contracting for performance in Texas, recruiting Texas residents for employment inside and\or outside the state and committing torts in the State of Texas. The causes-of-action asserted herein arise from such contact and business.

## VENUE

5.    At all times material to this incident, the Defendants were and are doing business in and through the Northern District of Texas.

6.    The incident made the basis of this suit occurred in the Northern District of Texas.

7.    The Defendants conduct business and sell their products in and throughout the Northern District of Texas, including the Lubbock division.

## STRICT LIABILITY· DESIGN & MARKETING DEFECTS

8.    On or about October 23, 2007, Plaintiff, E.S., who was then 22 months of age, was in the home when she came in contact with a "Staples MailMate Junk Mail Shredder" model number SPL-727MM with serial number 0703110005. E.S.'s fingers were instantly drawn into the paper shredder and down to the cutting blades, resulting in the traumatic partial amputation

of E.S.'s right middle finger.

9. On the day in question, E.S.'s hand was pulled into the paper shredder because the same did not have an appropriate guard and did not contain clear and adequate warnings.

10. As a producing and proximate result of the product defects described herein, E.S. sustained serious and permanent injuries, and Plaintiffs sustained the damages described herein.

11. The Defendants are closely related, coordinated and integrated. Specifically, they all worked together, as part of a common plan, in designing, developing, testing, evaluating, manufacturing, assembling, labeling, marketing, advertising, selling and distributing paper shredders, including the paper shredder involved in this civil action.

12. The paper shredder at issue in this suit was designed, manufactured, constructed, marketed and\or distributed by and through the agents and\or representatives of the Defendants.

13. The Defendants were all regularly engaged in the business of supplying or placing products, like the paper shredder in question, in the stream of commerce for use by the consuming public, including the Plaintiffs. Further, such conduct was solely for commercial purposes.

14. The paper shredder in question remained unchanged from the time it was originally manufactured, distributed and sold by Defendants until it reached Plaintiffs and ultimately led to Plaintiffs' damages. Stated another way, the paper shredder in question was defective and in an unreasonably dangerous condition when it left the hands of each of the Defendants and remained defective and unreasonably dangerous at all times thereafter until it ultimately caused Plaintiffs' damages.

15. At the time the paper shredder was placed into the stream of commerce, it was, or

should have been, reasonably expected and foreseeable that the paper shredder would be used by persons such as Plaintiffs in the manner and application in which it was being used at the time of the incident made the basis of this suit.

16. With respect to the design of the paper shredder, at the time it left the control of any and all of the Defendants, there were safer alternative designs. Specifically, there were alternative designs that, in reasonable probability, would have prevented or significantly reduced the risk of injury to E.S. Furthermore, such safer alternative designs were economically and technologically feasible at the time the product left the control of any and all the Defendants by the application of existing or reasonably achievable scientific knowledge.

17. At the time the paper shredder left control of any and all Defendants, it was defective and unreasonably dangerous in that it was not adequately designed or marketed to minimize the risk of injury. By way of example and without limitation, the product in question was unreasonably, dangerously defective in the following ways:

    a. the paper shredder in question was unreasonably, dangerously, defectively designed in that there was inadequate guarding to prevent a child's hand from being pulled into the paper shredder. The plastic housing around the paper inlet opening was of inadequate strength, which permitted the paper inlet opening to deflect or widen, thereby permitting passage of the child's fingers to the hazard. This made the paper shredder unreasonably, dangerously, defectively designed for the shredder's intended and foreseeable uses;

    b. the paper shredder in question was unreasonably, dangerously, defectively designed in that the auto start feature, coupled with an inadequate guard and the powerful pull force of the motor, can pull a child's finger into the shredder. This made the shredder unreasonably, dangerously, defectively designed for the shredder's intended reasonable foreseeable uses;

    c. the paper shredder in question was unreasonably, dangerously, defectively designed in that there is no release button or unlock to allow for easy extrication of jammed objects. This made the paper shredder unreasonably, dangerously, defectively designed for the shredder's intended and foreseeable uses;

    d.    the paper shredder in question was unreasonably, dangerously, defectively designed in that the paper shredder's cutting blades are located too close to the paper inlet opening. This made the paper shredder unreasonably, dangerously and defectively designed for its intended and reasonably foreseeable uses;

    e.    The paper shredder in question was unreasonably, dangerously, defective in that it did not contain adequate instruction or warning on the proper and safe use of the paper shredder and did not instruct or warn as to the manner to avoid risks and dangers involved. Moreover, the shredder did not warn that a child's hand could be pulled into the cutting blades. These failures made the paper shredder unreasonably, dangerously defective for its intended and reasonably foreseeable uses;

    f.    The paper shredder in question was unreasonably, dangerously, defective in that it fails to warn of the risks, nature and extent of danger associated with the reasonably foreseeable home uses of the shredder, and the paper shredder in question was unreasonably, dangerously, defective in that the warning and instructions provided, if any, were not in any form that could be reasonably expected to catch the attention of the reasonably prudent person while operating the paper shredder; and

    g.    The design defects mentioned above constitute a latent or hidden defect in that the ordinary consumers could not contemplate that a child's fingers could be pulled through the paper inlet opening.

18.    The above unreasonably dangerous defects in the paper shredder were proximate and producing causes of E.S.'s serious and permanent injuries and Plaintiffs' damages.

19.    The paper shredder was sold to Don and Patricia Settle at aStaples located at 6205 Slide Road, Lubbock, Texas 79414. Defendants knew this paper shredder would be used without inspection for defects and, by placing it upon the market, represented that it would safely perform the job for which it was intended.

20.    Defendants, either directly or through their alter ego, knew or should have known that the paper shredder was unreasonably dangerous and defective and posed a great risk of injury to children or those individuals with small hands, such as the injury E.S. suffered on

5

October 23, 2007.

21.     Defendants, either directly or through their alter ego, were involved in the design, manufacturing, assembly, marketing, distribution and sale of the paper shredder, which was defectively designed and failed to be equipped with proper safety equipment to prevent injury to children and individuals with small hands and as a consequence, Defendants are strictly liable in tort to the Plaintiffs.

## LIABILITY OF NON-MANUFACTURING SELLERS

22.     Pursuant to Texas Civil Practice and Remedies Code §82.003, to the extent Defendants claim immunity pursuant to §82.003(a), then Plaintiffs specifically plead the liability of non-manufacturing sellers.  More specifically, the non-manufacturing sellers (1) participated in the design of the product; (2) exercised substantial control over the content of warnings and instructions that accompany the product; the warnings and instructions were inadequate; and Plaintiffs' harm resulted from the inadequacy of the warnings and instructions; and (3) the manufacturer of the product is not subject to the jurisdiction of the Court.  For each of these reasons all of the named Defendants are ineligible for immunity under §82.003(a).

## NEGLIGENCE AND GROSS NEGLIGENCE

23.     Defendants have a duty to manufacture, distribute and sell products that are not unreasonably dangerous.  Defendants, acting by and through their agents and/or representatives breached this duty and were thereby negligent and grossly negligent, careless and reckless in designing, manufacturing, marketing, distributing and selling the paper shredder in question.  As a proximate result of one or more of the aforementioned negligent and grossly negligent acts or omissions of Defendants, Plaintiffs sustained serious and permanent injuries and damages.

## ACTUAL DAMAGES

24.     The unlawful acts and practices described above are and were a producing and proximate cause of E.S.'s serious and permanent injuries.  Those damages include, but are not limited to: physical pain and mental anguish sustained in the past and that will, in reasonable probability be sustained in the future; loss of earning capacity that, in reasonable probability, will be sustained in the future; disfigurement sustained in the past and that, in reasonable probability, will be sustained in the future; physical impairment sustained in the past and that, in reasonable probability, will be sustained in the future; and medical care in the past and medical care that, in reasonable probability, will be sustained in the future.

## EXEMPLARY DAMAGES

25.     Plaintiffs allege that the actions of the Defendants were fraudulent, malicious, and/or grossly negligent, and demonstrate conduct, acts and/or omissions, which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

26.     Plaintiffs allege that Defendants should be punished by an award of exemplary damages sufficient to deter Defendants and others similarly situated from committing the acts and/or omissions detailed herein.

As a direct result of Defendants conduct Plaintiffs seek recovery of actual damages against Defendants in excess of $75,000.00 together with an award of pre-judgment interest, costs, and such other relief as this Court may deem reasonable under the circumstances. Plaintiffs

further seek an award of exemplary damages in excess of $75,000.000 against each of the Defendants because their conduct evidences a reckless disregard for the Plaintiffs' personal safety.

## JURY DEMAND

Plaintiff demands a trial by jury.

**WHEREFORE**, premises considered, Plaintiffs pray for compensatory and punitive damages against all Defendants as set forth above, together with an award of pre and post judgment interest, costs, attorneys' fees and such other relief as this Court may deem appropriate.

Respectfully submitted,

/s/  Andrew L. Payne
**Andrew L. Payne**
Texas Bar No. 00791416
**PAYNE MITCHELL LAW GROUP**
Park Place on Turtle Creek
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas  75219
Telephone:   (214) 252-1888
Telecopier:   (214) 252-1889

**ATTORNEY FOR PLAINTIFFS**