IN THE UNITED STAES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| DON AND PATRICIA SETTLE<br>As Next Friends of E.S., a Minor<br>Plaintiffs | § § § § | |
| V. | § | Civil Action No. 5:11-cv-00155-C |
| STAPLES, INC. (Defendant 1); STAPLES<br>THE OFFICE SUPERSTORE, L.L.C.<br>(Defendant 2); and Executive Machines, Inc.<br>(Defendant 3)<br>Defendants | § § § § § § | |

## COMPROMISE SETTLEMENT AND RELEASE AGREEMENT

For and in consideration of mutual covenants herein contained and for other good and valuable consideration, the receipt of which is hereby acknowledged and confessed, Plaintiff, Patricia Settle as Next Friend of Emily Settle, a Minor ("Plaintiff"), subject to the approval of the Court referenced above, does hereby agree upon a complete compromise and settlement of all the claims asserted or which could have been asserted in this case against Defendants Staples, Inc., Staples the Office Superstore, L.L.C., and Executive Machines, Inc. (collectively, "Defendants") as follows:

I.

### RECITALS

Plaintiff alleges that on or about October 23, 2007, Emily Settle was injured when her hand was pulled into a paper shredder manufactured, distributed, and/or sold by one or more Defendants (the "Incident").

II.

### PAYMENTS TO PLAINTIFF

In settlement of Plaintiff's claims against Defendant, it is agreed that the following payments shall be made to Plaintiff as follows:

1. The sum of $124,559.00 shall be paid to Plaintiff Patricia Settle, as Next Friend of Emily Settle, a Minor, and their attorney Andrew L. Payne, said sum to be divided as they shall subsequently

agree and subject to approval of the Court. It is agreed that $25,000.00 of the sum payable to Plaintiff and her attorney as specified in this subparagraph shall be paid by or on behalf of Defendant Staples, Inc. and Staples the Office Superstore, L.L.C., and that $99,559.00 of the sum payable to Plaintiff and her attorney specified in this subparagraph shall be paid on behalf of Defendant Executive Machines, Inc., through its liability insurance carrier Citizens Insurance Company of America.

2. In addition to the sums specified in subparagraph 1, Citizens Insurance Company of America on behalf of Defendant Executive Machines, Inc. for the premium of $162,941.00, shall purchase a structured settlement annuity (identified in the Qualified Assignment, Release and Pledge Agreement attached as Exhibit A) for the benefit of Emily Settle to make the following periodic payments to Emily Settle ("Payee") as follows:

   a. $20,000.00 payable semi-annually, guaranteed for ten (10) payments, beginning on 07/01/2024.

   b. $850.00 payable monthly, guaranteed for seventy-two (72) payments, beginning on 12/05/2023.

All sums contained in this paragraph constitute damages on account of personal injuries or sickness, within the meaning of §104(a)(2) of the Internal Revenue Code of 1986, as amended.

III.

RELEASE AND DISCHARGE

In consideration of the payments set forth in Article II above, and in further consideration of the mutual promises herein contained, Plaintiff Patricia Settle as Next Friend of Emily Settle, a minor, does for herself, Emily Settle, and their respective heirs, executors, administrators, successors and assigns ("Releasor") hereby release, and forever discharge Executive Machines, Inc., Staples, Inc., Staples the Office Superstore, L.L.C., Hanover Insurance Company and all of its subsidiaries and affiliates, Citizens Insurance Company of America, and any and all of their respective agents, servants, successors, heirs, executors, administrators and all other persons, counsel, employees, corporations, partners, officers,

directors, subsidiaries, affiliates, firms, predecessors and successors in interest (all of said released Parties persons hereinafter called "Released Parties") of and from any and all claims, actions, causes of action, liens, or conditional payments, demands, rights, damages, costs, loss of service, expense and compensation whatsoever of every name and nature, known or unknown, which Releasor now has or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen or unforeseen, bodily and personal injuries, illnesses, and property damage and the consequences thereof resulting from or arising out of an accident or incident which occurred on or about October 23, 2007 when Plaintiff Emily Settle's hand was pulled into a paper shredder, all as described in Plaintiff's petition or complaint in the above-styled and numbered cause. The foregoing release and discharge is intended by Releasor to be as broad and in favor of Released Parties as Releasor can possibly can create, and it is intended that the release of the Released Parties specified herein is a release by Releasor of all the Released Parties of any and all claims, demands, actions or causes of action arising from or in any way connected with the matters and things set forth and alleged, or which could have been set forth and alleged, by Plaintiff in her pleadings in Cause No. 5:11-CV-00155-C styled *"Patricia Settle, as Next Friend of E.S. a Minor v. Staples, Inc., Staples the Office Superstore, L.L.C., and Executive Machines, Inc."* pending in the United States District Court for the Northern District of Texas, Lubbock Division (the "Lawsuit").

Releasor recognizes that the consideration referred to above is intended to effectuate the compromise of a doubtful and disputed claim, and is not to be construed as an admission of liability on the part of any of the Released Parties, each of whom expressly denies liability.

Plaintiff further recognizes that any injuries or illnesses sustained in the above-described Incident are or may be permanent and progressive and that the recovery from said injuries or illnesses is uncertain and undefinite, and in entering into this Release, Releasor is not relying on any statement of any of the Defendants or Released Parties with respect to the nature, extent, or duration of said injuries. Releasor further declares and represents that no promise, inducement or agreement not herein expressed has been made to Releasor. Releasor further stipulates that the terms of this Release are contractual and not a mere

recital and that the representations in this Release are material representations upon which Released Parties have relied in making this settlement.

Releasor stipulates and agrees that he/she is responsible for payment of all outstanding and future bills relating to medical and prescription drug items or services associated with injuries or illnesses arising from or relating to the Incident or forming the basis of the claims asserted by Releasor ("Medical Services").

Releasor further stipulates and agrees that he/she is solely responsible for satisfying any conditional payment, lien or other obligation to reimburse the Centers for Medicare & Medicaid Services ("CMS") and/or its contractors, other governmental entities [or programs], insurers, or other sources of payment or benefits for any Medical Services furnished to Releasor (or Emily Settle), Releasor acknowledges and agrees that it is his/her responsibility, and not that of Released Parties, to satisfy any and all conditional payments, liens, subrogation and other claims or demands for payment associated with Medical Services that may arise in any manner, including without limitation under the Medicare Secondary Payer ("MSP") statute (42 U.S.C. §1395y(b)), contract, or other applicable state or federal law.

> With respect to Medicare status, Releasor hereby represents and warrants that he/she and Emily Settle: (a) is not currently entitled to Medicare benefits ; (b) was not entitled to Medicare benefits on or between the date of the Incident and execution of this Release and (c) does not reasonably expect to qualify for Medicare coverage within 30 months of executing this Release;

In order to give full effect to the intent expressed in this Release, Releasor stipulates and agrees in consideration for the aforesaid payments, to fully indemnify and hold harmless Released Parties and their insurers from any and all loss associated with any conditional payment, lien, subrogation or other claim or demand asserted by CMS and/or its contractors, other governmental entities [or programs], insurers or any other sources of payment or benefits that may arise in any manner, including without limitation, under the MSP statute (42 U.S.C. § 1395y(b)), contract, or other applicable statute or federal law relating to Medical Services or from Releasor's failure to make the payments and satisfaction described in this Release. Releasor further agrees to indemnify and hold harmless Released Parties from any and all loss resulting from Releasor's failure to provide accurate representations and warranties or to adhere to the representations and warranties contained herein. This indemnification from loss includes all damages and

costs incurred by Released Parties and/or their attorneys, including without limitation, any attorney's fees, fines, and penalties, interest, expenses, judgments, and multipliers.

IV.

TERMS OF STRUCTURED SETTLEMENT

1. PAYMENT IN THE UNITED STATES DOLLAR

All Periodic Payments to be made as identified in the Article II.2. above, shall be made in the United States despite the residency of the Payee in any foreign land and/or country other than the United States of America.

2. ACCELERATION, TRANSFER OF PAYMENT RIGHTS

None of the Periodic Payments and no rights to or interest in any of the Periodic Payments (all of the foregoing being hereinafter collectively referred to as "Payment Rights") can be:

    i. Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or

    ii. Sold, assigned, pledged, hypothecated, or otherwise transferred to encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in §5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

    No Claimant or Successor Payee shall have the power to effect any Transfer Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void.

    If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of the Agreement and any defense or claim in recoupment arising hereunder.

3. PAYEE'S BENEFICIARY

Any payments made after the death of Payee pursuant to the terms of this Settlement Agreement shall be made to the estate of Payee or to such person or entity as shall be designated in writing by Payee to the Assignee (hereinafter identified). If no person or entity is so designated by the Payee, or if the person designated is not living at the time of the Payee's death, such payments shall be made to the estate

of the Payee. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the said Assignee. The designation must be in a form acceptable to said Assignee before such payments are made. If Payee is a minor at the time of the signing of this document, the beneficiary will be her Estate. Upon reaching the age of majority, the Payee may request a change in beneficiary in writing and delivered to the Assignee.

4.  CONSENT TO QUALIFIED ASSIGNMENT

Plaintiff acknowledges and agrees that Defendant Executive Machines, Inc. and/or its Insurer, Citizens Insurance Company of America, will make a "qualified assignment" within the meaning of §130(c) of the Internal Revenue Code of 1986, as amended, of Executive Machine, Inc.'s and/or Citizens Insurance Company of America's liability to make the Periodic Payments set forth in Section II.2. above to BHG Structured Settlements, Inc. (the "Assignee"). The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of Defendant Executive Machines, Inc. and/or its insurer, Citizens Insurance Company of America (whether by judgment or agreement) immediately preceding the assignment of the Periodic Payments obligation.

Any such assignment, if made, shall be accepted by the Plaintiff without right of rejection and shall completely release and discharge Defendant Executive Machines, Inc. and its insurer Citizens Insurance Company of America from the Periodic Payments obligation specified in Article II.2. that is herein assigned to the Assignee. The Plaintiff recognizes that, in the event of such an assignment, the Assignee shall be the sole obligor with respect to the Periodic Payments obligation, and that all other releases with respect to the Periodic Payments obligation that pertain to the liability of the Defendant Executive Machines, Inc. and the Insurer Citizens Insurance Company of America shall thereupon become final, irrevocable and absolute.

5.  RIGHT TO PURCAHSE AN ANNUITY

Defendant Executive Machines, Inc. and/or its Insurer, Citizens Insurance Company of America, itself or through its Assignee reserve the right to fund the liability to make the Periodic Payments through the purchase of an annuity policy from Berkshire Hathaway Life Insurance Company of Nebraska. Said

Defendant, Insurer or the Assignee shall be the sole owner of the annuity policy and shall have all rights of ownership. Said Defendant, Insurer, or the Assignee may have Berkshire Hathaway Life Insurance Company of Nebraska mail payments directly to the Payee(s). The Plaintiff shall be responsible for maintaining a current mailing address of Payee(s) with Berkshire Hathaway Life Insurance Company of Nebraska.

6.   DISCHARGE OF OBLIGATION

The obligation of said Defendant Executive Machines, Inc., its Insurer and/or Assignee to make each Periodic Payment shall be discharged upon the mailing of a valid check in the amount of such payment to the designated address of the Payee(s) named in the Payments Section above.

It is understood by all parties involved and signing this document that after the transfer of obligation to make the Periodic Payments and the annuity purchase to fund the Periodic Payments; the obligation of the insurer(s) will be fulfilled. It is understood that the sole obligor with respect to the future Periodic Payment obligation will be BHG Structured Settlements, Inc., the Assignee, and Berkshire Hathaway Life Insurance Company of Nebraska, the annuity issuer. Also, should there be a failure of either BHG Structured Settlements, Inc., the Assignee, or Berkshire Hathaway Life Insurance Company of Nebraska, the annuity issuer, to meet their obligation, under no circumstances should anyone look to Executive Machines, Inc. or Citizens Insurance Company of America, the insurer, for restitution.

VII.

It is understood and agreed by the parties that taxable costs in the above-styled and numbered cause will be paid by the party incurring the same (except the guardian ad litem's fee shall be paid by the Defendants).

VIII.

**INDEMNIFICATION**

**For the consideration recited above, Plaintiff agrees to indemnify and hold harmless each of the Released Parties and their respective insurers, from and against any and all further claims, demands, actions, or causes of action, judgments, or liabilities, brought by or through Plaintiff,**

**Releasor, or Emily Settle resulting from the Incident that is the subject of the Lawsuit, even if such claim or liability results from or is alleged to result from the negligence or other fault of any of the Released Parties hereunder.**

IX.

ADDITIONAL REPRESENTATIONS

1. REPRESENTATIONS OF COMPREHENSION OF DOCUMENT.

In entering into this Compromise Settlement Agreement and Release (the "Settlement Agreement"), the undersigned represents that she has relied upon the legal advice and services of her attorney, the terms of this Settlement Agreement have been fully read and explained to her by her counsel, and that those terms are fully understood, and the undersigned voluntarily accepts them. The undersigned expressly represents that she has not relied upon the Released Parties or any agent or any employee of said Released Parties in negotiating or reaching this settlement. The undersigned represents that she has reviewed this Settlement Agreement and has made an independent decision to enter into this Settlement Agreement.

2. OWNERSHIP OF CLAIM.

The undersigned hereby states and warrants that she is the sole owner of the claims which have been asserted by her, that such claims have not been assigned, encumbered or transferred, and that she has the sole right and exclusive authority to execute this Settlement Agreement and to receive the sums specified in it. The undersigned further represents that as of the date of signing this Settlement Agreement, she has attained the age of 18 years of age and has the legal capacity to execute this Settlement Agreement. The undersigned Patricia Settle also affirmatively states that she is signing this Settlement Agreement on her individual behalf, and as next friend of Emily Settle.

3. ASSIGNMENT OF CLAIMS.

Any and all claims of the undersigned against any of the Released Parties arising out of or in any way connected with the Incident, which are not specifically released herein, if any, are hereby assigned in full to the Released Party against whom the claim would be made.

4. ADDITIONAL TERMS.

This Settlement Agreement contains the entire agreement between the parties, and the terms of this Settlement Agreement are contractual and not a mere recital. This Settlement Agreement shall be binding upon and inure to the benefit of executors, administrators, personal representatives, heirs, successors, and assigns of each of the undersigned and each Released Party.

5. TEXAS LAW.

This Settlement Agreement shall be governed and construed and interpreted in accordance with the laws of the State of Texas.

DATED: 29 May 2012

_____
Patricia Settle, as parent, natural Guardian and next friend of Emily Settle, a Minor

APPROVED AS TO FORM:

_____
Andrew L. Payne, Attorney for Plaintiff

STATE OF TEXAS §
§
COUNTY OF Lubbock §

BEFORE ME, the undersigned authority, on this day personally appeared Patricia Settle, who is (*please initial one*) ___ personally known to me, ___ provided to me upon oath of _____, or ___ identified by viewing his/her driver's license/identification card to be the person whose name is subscribed hereto and who stated to me under oath that he/she signed the foregoing instrument for the purpose and considerations therein expressed.

TO CERTIFY WHICH WITNESS MY HAND AND SEAL OF OFFICE on this 29th day of May, 2012

_____
Notary Public in and for the State of Texas

KEVIN W. VICE
Notary Public, State of Texas
My Commission Expires
October 10, 2015

# EXHIBIT A

# Qualified Assignment, Release and Pledge Agreement
*in Accordance with*
*Internal Revenue Code Section 130*

"**Claimant-Secured Party**": Patricia Settle as next friend of Emily Settle, a minor

"**Assignor**": Citizens Insurance Company of America

"**Settlement Agreement**": _____
[Date and exact title of Settlement Agreement, order or other document that sets forth the Assignor's obligation to make the agreed periodic payments]

"**Assignee-Debtor**": BHG STRUCTURED SETTLEMENTS, INC.

"**Annuity Issuer**": BERKSHIRE HATHAWAY LIFE INSURANCE COMPANY OF NEBRASKA

"**Effective Date**": _____

**Annuity Contract No.:** _____

This **Qualified Assignment, Release and Pledge Agreement** ("Agreement") is made and entered into as of the Effective Date by and among the undersigned parties with reference to the following facts:

A. Claimant-Secured Party and Assignor are parties to or are otherwise subject to, and Claimant-Secured Party is/are entitled to receive payments under the above-referenced Settlement Agreement, under which Assignor has liability to make certain periodic payments to or for the benefit of Claimant-Secured Party as specified in Addendum No. 1 of this Agreement (the "Periodic Payments"); and

B. Assignor and Assignee-Debtor wish to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code of 1986, as amended (the "Code").

C. Assignee-Debtor desires to grant to Claimant-Secured Party a secured interest to secure the liability being assumed by Assignee-Debtor to make the Periodic Payments.

**Now, therefore,** in consideration of the foregoing and for other good and valuable consideration, the parties agree as follows:

1. **Assignment and Assumption; Release of Assignor.** Assignor hereby assigns to Assignee-Debtor, and Assignee-Debtor hereby accepts and assumes, all of Assignor's liability to make the Periodic Payments. Each Claimant-Secured Party hereby accepts and consents to such assignment by Assignor and assumption by Assignee-Debtor. Effective on the Effective Date, each Claimant-Secured Party hereby releases and discharges Assignor from all liability to make the Periodic Payments.

2. **Nature of Periodic Payments.** The Periodic Payments constitute

   i. damages (other than punitive damages), whether by suit or agreement, or

   ii. compensation under a workers' compensation act,

   on account of personal injury or sickness in a case involving physical injury or physical sickness, within the meaning of Sections 130(c) and 104(a) of the Code.

3. **Extent of Assignee's-Debtor's Liability.** Assignee's-Debtor's liability to make the Periodic Payments shall be no greater than the liability of Assignor as of the Effective Date. Assignee-Debtor assumes no liability other than the liability to make the Periodic Payments. Assignee's-Debtor's liability to make the Periodic Payments shall be unaffected by any bankruptcy or insolvency of Assignor.

4. **Qualified Funding Asset.** Assignee-Debtor will fund the Periodic Payments by purchasing from Annuity Issuer a "qualified funding asset," as defined in Section 130(d) of the Code, in the form of an annuity contract (the "Annuity") issued by Annuity

Issuer and providing for payments corresponding to the Periodic Payments. Assignee-Debtor shall be designated as the owner of the Annuity. All rights of legal ownership and control of the Annuity shall (subject to Paragraph 9 of this Agreement) be and remain vested exclusively in Assignee-Debtor, including the right to receive and retain all benefits under the Annuity which are not inconsistent with the security interest granted under Paragraph 11; provided, however, that the Annuity shall be used by Assignee-Debtor to fund the Periodic Payments and shall at all times be designated by Assignee-Debtor on its records as being taken into account, under Section 130 of the Code, with respect to this Agreement. Notwithstanding anything to the contrary contained in this Agreement, neither any Claimant-Secured Party nor any Successor Payee <u>(as defined in Paragraph 8 of this Agreement)</u> shall have any rights with respect to the Annuity or the payments thereunder that would cause any amount attributable to the Annuity to be currently includable in the recipient's income or would otherwise affect the determination of when any recipient is treated as having received any payment for income tax purposes, or would otherwise prevent this Agreement from satisfying all of the conditions for a "qualified assignment" within the meaning of Section 130(c) of the Code.

5. **Delivery of Payments.** Assignee-Debtor may instruct Annuity Issuer to send payments directly to Claimant-Secured Party, or, if applicable, to a Successor Payee. Such direction of payments under the Annuity shall not be deemed to afford Claimant-Secured Party or any Successor Payee any rights of ownership or control of the Annuity.

    Each Claimant-Secured Party and any Successor Payee shall at all times keep Annuity Issuer apprised of such Claimant-Secured Parties or Successor Payee's current street address and telephone number and, if such Claimant–Secured Party or Successor Payee receives payments by electronic funds transfer, the name, address, ABA routing number and telephone number of the applicable depository institution and the account name and number of the account to which the payments are to be credited. Such notices shall be in a form reasonably acceptable to Annuity Issuer.

6. **Discharge of Liability.** Assignee's-Debtor's liability to make each Periodic Payment to Claimant-Secured Party or Successor Payee designated to receive such payment shall be fully discharged upon:

    i. the mailing of a valid check on or before the due date for such payment to the address of record specified by Claimant-Secured Party or Successor Payee; or

    ii. the electronic funds transfer (EFT) on or before the due date for such periodic payment to the financial institution account designated by Claimant-Secured Party or Successor Payee.

7. **Acceleration, Transfer of Payment Rights.** None of the Periodic Payments and no rights to or interest in any of the Periodic Payments (all of the foregoing being hereinafter collectively referred to as "Payment Rights") can be

    i. Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or

    ii. Sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

    No Claimant-Secured Party or Successor Payee shall have the power to effect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder.

    If, due to insolvency or bankruptcy Assignee-Debtor has failed to make any of the Periodic Payments, and such failure is continuing, Claimant-Secured Party shall have all of the rights and remedies of a secured party under the law then in effect in the State of Nebraska.

8. **Contingent Beneficiaries.** Any Periodic Payments to be made after the death of any Claimant-Secured Party or Successor Payee shall be made to such party as shall have been designated in, or in accordance

with, the Settlement Agreement. Any party so designated is referred to in this Agreement as a "Contingent Beneficiary." If no Contingent Beneficiary is living at the time of the death of a Claimant-Secured Party or Successor Payee, payment shall be made to the decedent's estate unless otherwise provided in the Settlement Agreement. As used in this Agreement the term "Successor Payee" refers to a Contingent Beneficiary or an estate that has become entitled to receive Periodic Payments following the death of a Claimant-Secured Party or a Successor Payee. Except as otherwise provided in the Settlement Agreement, no designation or change of designation of a Contingent Beneficiary shall be effective unless such change (i) is requested in a written request submitted to Assignee-Debtor in accordance with Assignee's-Debtor's customary procedures for processing such requests; and (ii) is confirmed by Assignee-Debtor. Except for a designation that is expressly identified in the Settlement Agreement as irrevocable, any designation of a Contingent Beneficiary shall be deemed to be revocable; and no party that is designated as a Contingent Beneficiary (other than a party irrevocably designated as a Contingent Beneficiary in the Settlement Agreement) shall, solely by virtue of its designation as a Contingent Beneficiary, be deemed to have any cognizable interest in any Periodic Payments.

9. **Failure to Satisfy Section 130(c).** If at any time prior to completion of the Periodic Payments, the Settlement Agreement is declared terminated in a final, non-appealable order of a court of competent jurisdiction (or in the case of a workers' compensation settlement, a final order of the applicable workers' compensation authority) or if it is determined in any such final order that the requirements of Section 130(c) of the Code have not been satisfied in connection with this Agreement: (i) the assignment by Assignor to Assignee-Debtor of the liability to make the Periodic Payments, Assignee's-Debtor's acceptance of such assignment and the release by Claimant-Secured Party of Assignor's liability shall be of no force or effect; (ii) Assignee-Debtor shall be conclusively deemed to be acting as the agent of Assignor; (iii) the Annuity shall be owned by Assignor, which shall retain the liability to make the Periodic Payments; (iv) Assignee-Debtor shall have no liability to make any Periodic Payments; and (v) the parties hereto agree to cooperate in taking such actions as may be necessary or appropriate to implement the foregoing.

10. **Governing Law; Disclosure of Certain Tax Information; Binding Effect.**
    i.  This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of _____; provided, however, that any Transfer of Payment Rights under this Agreement may be subject to the laws of other states in addition to the state designated above.
    ii. This Agreement shall be binding upon the parties hereto and their respective successors, heirs, executors, administrators and permitted assigns, including without limitation any party asserting an interest in Payment Rights.

11. **Claimant-Secured Party Status** Assignee-Debtor hereby pledges and grants to Claimant-Secured Party a lien on and security interest in all of Assignee-Debtor's right, title, and interest in the Annuity and all payments therefrom in order to secure the obligation of Assignee-Debtor to make the Periodic Payments. Assignee-Debtor and Claimant-Secured Party shall notify Annuity Issuer of the lien created under this Agreement, and Assignee-Debtor shall deliver a copy of the Annuity to Claimant-Secured Party upon execution of this Agreement and receipt by Assignee-Debtor of the Annuity from Annuity Issuer.

12. **Advice, Comprehension of Agreement.** In entering into this Agreement, each Claimant-Secured Party warrants, represents and agrees that Claimant-Secured Party is solely relying on the attorneys and advisors of such Claimant-Secured Parties own choosing, and not upon Assignor, Assignee-Debtor or their advisors, for legal and tax advice regarding the consequences of this Agreement. Each Claimant-Secured Party further warrants, represents and agrees that the terms of this Agreement have been completely read by and explained to such Claimant-Secured Party and are fully understood and voluntarily accepted by such Claimant-Secured Party. Furthermore, each Claimant-Secured Party hereby releases and discharges Assignor, Assignee-Debtor, and Annuity Issuer, their respective counsel and anyone else associated with them from any and all claims, rights, damages, costs or expenses of any nature whatsoever that may hereafter accrue to or be acquired by Claimant-Secured Party by reason of the legal or tax consequences of the Periodic Payments to be made pursuant to this

Agreement being other than those anticipated by Claimant-Secured Party.

13. **Description of Periodic Payments.** The Periodic Payments are as set forth in Addendum No. 1 attached, which is hereby incorporated in and made a part of this Agreement.

**This Qualified Assignment, Release and Pledge Agreement** is signed in one or more counterparts as of the Effective Date by the following:

**Assignor**: Citizens Insurance Company of America

By:_____
     Authorized Representative

Title:_____

**Assignee-Debtor:**
BHG Structured Settlements, Inc.

By:_____
     Authorized Representative

Title:_____

**Claimant-Secured Party:**

By: Patricia Settle as next friend of Emily Settle, a minor
     Claimant-Secured Party Signature

By:_____
     Claimant-Secured Party Signature

**Attorney for Claimant-Secured Party:**

By:_____
     Signature

By:_____
     Signature

# Addendum No. 1
## Description of Periodic Payments

**Payee: Emily Settle**
$20,000.00 payable semi-annually, guaranteed for 10 payments, beginning 7-1-2024.

$850.00 payable monthly, guaranteed for 72 payments, beginning 12-5-2023.

**INITIALS**

| | |
|---:|:---|
| Assignor: | _____ |
| Assignee-Debtor: | _____ |
| Claimant-Secured Party: | _____  _____  _____ |
| Attorney for Claimant-Secured: | _____  _____  _____ |